UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MIAMI

CASE NO: **09-CV-20125-Lenard-Garber**

PRIVATE JET SERVICES GROUP, INC.,

    Plaintiff,

vs.

FALCON AIR EXPRESS, INC. d/b/a UFLY AIRWAYS,

    Defendant.

_____/

FILED by __VT__ D.C.
ELECTRONIC

Jan. 15, 2009

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## COMPLAINT

Plaintiff, PRIVATE JET SERVICES GROUP, INC. ("PJSG"), files its Complaint against Defendant, FALCON AIR EXPRESS, INC. d/b/a UFLY AIRWAYS ("UFLY"), and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. PJSG is a New Hampshire corporation with its principal place of business located in Seabrook, New Hampshire.

2. UFLY is a Florida corporation with its principal place of business in Miami, Florida.

3. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that there is complete diversity between the parties and the matter in controversy exceeds $75,000.00, exclusive of interest, costs, and attorney's fees.

4. Venue is proper in this court pursuant to 28 U.S.C. § 1391.

### GENERAL ALLEGATIONS

5. On or about August 29, 2008, PJSG, acting as an agent for its client Hidden

Champions, contracted with UFLY to provide charter airline services (travel commencing on January 12, 2009 with a return flight on January 14, 2009). A copy of the contract between PJSG and UFLY (Contract No. 08-136, hereinafter the "Full Charter Contract") is attached as **Exhibit A**.

6. In accordance with the terms of the Full Charter Contract, PJSG, as agent for Hidden Champions, paid UFLY a total contract price of $121,931.60 in advance for the charter airline services.

7. On information and belief, UFLY had contracted for two flights on the same day for the same aircraft and elected to operate the flight for its other client rather than the flight which is the subject of the attached Full Charter Contract between PJSG, as agent for Hidden Champions, and UFLY.

8. Hidden Champions paid $173,456.00 to Miami Air for replacement service in order to provide a timely solution to UFLY's failure to perform under the Full Charter Contract.

## COUNT I – BREACH OF CONTRACT

9. PJSG incorporates in Count I the allegations contained in paragraphs 1 through 8 above.

10. The Full Charter Contract is a valid contract between PJSG and UFLY which is governed by the laws of the State of Florida.

11. PJSG fully and timely performed all of its obligations under the Full Charter Contract, including but not limited to, the payment of the total contract price of $121,931.60.

12. All conditions precedent to the maintenance of this action have been performed and/or waived.

13. UFLY has breached the Full Charter Contract by failing to perform its obligations

2

under the Full Charter Contract.

14. As a result of UFLY's breach of its contractual responsibilities under the Full Charter Contract, PJSG and its client Hidden Champions have been damaged in an amount in excess of $173,456.00.

15. The Full Charter Contract contains a provision entitling the prevailing party to reasonable attorney's fees.

16. PJSG has retained the undersigned law firm to represent it in this action.

WHEREFORE, PJSG demands judgment against UFLY for damages in excess of $75,000.00, plus interest, costs and attorney's fees.

Respectfully submitted, this 15th day of January, 2009

> SEDGWICK DETERT MORAN & ARNOLD LLP
> Attorneys for Plaintiff
> 2400 East Commercial Boulevard
> Suite 1100
> Fort Lauderdale, FL 33308
> Telephone:   954.958.2500
> Facsimile:   954.958.2513
>
> KENNETH W. WATERWAY
> Florida Bar No.: 0994235
> ken.waterway@sdma.com
> JEANNINE C. JACOBSON
> Florida Bar No.: 058777
> jeannine.jacobson@sdma.com

3

# FALCON AIR EXPRESS DBA UFLY AIRWAYS
## FULL CHARTER CONTRACT
### Contract 08-136

This FULL Charter Agreement is made and entered into as of this 29th day of August, 2008 by and between:

- **Falcon Air Express, Inc. dba UFLY Airways**, ("UFLY") a Florida corporation with its principal place of business located at 9500 NW 41st Street, Miami, FL 33178

- **Private Jet Services Group** ("**CHARTERER**") with its principal offices located at 5 Batchelder Road, Seabrook, New Hampshire, 03874

This charter contract ("Agreement") is made between Falcon Air Express, Inc. (UFLY) and Charterer. Wherein it is mutually agreed that Charterer shall purchase from UFLY, and UFLY shall furnish to Charterer, charter air transportation (hereafter the Flight(s) or charters), subject to the terms and conditions herein.

## AIRCRAFT / FUEL PRICE / CHARTER TYPE

A/C Type: MD-82    Seating Capacity: 131 passengers    Base Fuel Price per Gallon: $4.75
Charter Type: Private Charter

## CONTRACT CHARGES

| Base Price: | Meal Service: | Passenger Service: | Liquor Service: |
|---|---|---|---|
| $109,226.00 | Snack service | Terminal | None |

**Taxes Domestic Charter:**
US domestic tax 7.5%
Segment Fee - $3.50/pax
PFC - $4.50/pax
PFC - $3.00/pax
9/11 Security Fee - $2.50/pax

**Taxes additional to the Charter Base Price**
**Taxes Int'l Charter:**

| | |
|---|---|
| US Departure Tax - $15.40/pax | $2,017.40 |
| PFC - $4.50/pax | $589.50 |
| 9/11 Security Fee - $2.50/pax | $327.50 |
| US Arrival Tax - $15.40/pax | $2,017.40 |
| Immigration - $7.00/pax | $917.00 |
| APHIS - $5.00/pax | $655.00 |
| Customs - $5.50/pax | $720.50 |
| Canada GST-5% | $5,461.30 |

TOTAL TAXES:                                TOTAL TAXES:    $12,705.60

ALL PASSENGER TAXES AND/OR FEES (BOTH U.S. AND INTERNATIONAL) ARE TO BE PAID BY CHARTERER UNLESS INCLUDED IN THIS CONTRACT. WHEN NOT INCLUDED IN CONTRACT, SEND W-9 FORM WITH SIGNED CONTRACT.

**Total Contract Price:    $121,931.60**

## PAYMENT SCHEDULE/INSTALLMENTS

| | |
|---|---|
| Deposit (20% of contract price) due at contract signing payable to non-escrow account: | $24,386.32 |
| Balance due 15 days prior to first flight departure payable to non-escrow account: | $97,545.28 |

## PAYMENT REMITTANCE

Total contract price shall be paid to UFLY in U.S. currency and sent via wire as follows:

**PAYMENT FOR PRIVATE CHARTER (Non-Escrow)**
- *Bank Name:* Wachovia
- *Bank City:* Miami, FL
- *Bank ABA:* 063000021
- *Account Number:* 2000040453314
- *Account Name:* Falcon Air Express dba Ufly Airways
- *Reference:* Contract Number 08-136

**PAYMENT FOR PUBLIC CHARTER (Escrow)**
- *Bank Name:* Valley National Bank
- *Bank City:* Wayne, NJ
- *Bank ABA:* 021 201 383
- *Account Number:* 041074823
- *Account Name:* Falcon Air Express dba Ufly Airways
- *Reference:* Contract Number 08-

UFLY: _____ DATE: 9/2/08    CHARTERER: _____ DATE: 8/29/08

1

**EXHIBIT "A"**

**FALCON AIR EXPRESS DBA UFLY AIRWAYS**
FULL CHARTER CONTRACT
Contract 08-136

WHEREAS:

(a) UFLY will charter to CHARTERER one (1) MD80 series (the "Aircraft") under the commercial terms known as a "FULL CHARTER" in accordance with the proposed itinerary attached as Schedule "A". For consideration of UFLY's agreement to provide the foregoing services, CHARTERER shall pay to UFLY, on demand, all of those costs and fees in accordance with Exhibit "A" attached hereto. CHARTERER's obligation to pay all such amounts shall be absolute and unconditioned, unless such obligation is terminated pursuant to the express provisions of this agreement.

(b) CHARTERER's obligation to pay this same shall not be affected or reduced by any circumstances, including without limitation, any set-off, counter claims, recoupment, defense, or other right which CHARTERER may have against UFLY, other than as expressly provided in this Agreement.

NOW, THEREFORE in consideration of the provisions and mutual covenants herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each of the parties hereto, IT IS AGREED as follows:

1. **TERM AND SCOPE OF AGREEMENT**

    1.1 The Term of this Agreement shall be for the dates upon which the flight segments identified in Schedule "A", hereto known as the "Schedule".

    1.2 CHARTERER agrees to guarantee payment for services for dates identified in Schedule "A" throughout the term of the contract.

2. **ITINERARY**

    2.1 The price of this charter Agreement is based upon the proposed itinerary submitted by CHARTERER as shown in this Agreement and marked Schedule "A". Any costs resulting from any deviation from such itinerary shall be for the account of CHARTERER. Any deviations from the agreed itinerary shall be cause for the parties to enter into negotiations regarding the "Base Charter Price". UFLY shall be under no obligation to continue its performance under this Agreement should a deviation from the agreed itinerary occur without the parties reaching an agreement regarding the "Base Charter Price".

3. **CONDITION OF AIRCRAFT AT DELIVERY**

    3.1 The Aircraft will be configured with One Hundred Thirty One Seats (131)

    (119) Coach seats for the MD80 series in Royal Blue Fabric.
    (12) Business class seats for the MD80 series in Sky Blue Synthetic Leather.

    3.2 Aircraft Livery:   Aircraft Fuselage is WHITE
    Aircraft Tail is NAVY BLUE
    Aircraft Engines are NAVY BLUE

    3.3 Changes to the Aircraft Configuration and Livery may be accomplished by amendment to this Agreement

    3.4 UFLY, at its sole discretion, may deliver to CHARTERER another aircraft from UFLY's fleet with a minimum seating configuration as identified in 3.1 so long as this does not represent an additional cost to CHARTERER.

UFLY: _(signature)_ DATE: 9/2/08    CHARTERER: _(signature)_ DATE: 8/29/08

2

# FALCON AIR EXPRESS DBA UFLY AIRWAYS
FULL CHARTER CONTRACT
Contract 08-136

4. **COMPLIANCE WITH CHARTER REGULATIONS**

   4.1 All Charters

   Charterer and its agents, passengers and contractors shall be deemed to have notice of, and shall comply in all respects with, Part 212 of the Economic Regulations of the United States Department of Transportation ("D.O.T"), 14 C.F.R. Part 212; Part 372 and 380 of the Special Regulations of the DOT, and all other applicable laws, rules, or regulations (hereinafter collectively "Charter Regulations"). To the extent applicable, the Charter Regulations shall govern the relations between the parties notwithstanding any provisions of this contract. Charterer acknowledges it has in its possession a copy of the Charter Regulations in effect the date hereof. In the event that Charterer or any passenger or prospective passenger on any Flight has failed to observe such Charter Regulations, UFLY shall have the power and right, at its option, to either cancel the flight upon such failure by Charterer or to refuse to board any of the passengers or perspective passengers for such Flight upon such failure by such passenger without any liability or penalty against UFLY of any kind. The Charterer shall cooperate and shall cause any travel agent, tour operator, or other principal or agent involved with the charter to provide any information or certification required by the Department of Transportation in connection with the Flight.

   4.2 Public Charters

   Charterer agrees to make necessary filings with the DOT required by Part 380 at its sole expense. UFLY shall receive copy of the approved documents with the DOT Public Charter number assigned to the specific contracted flight(s) herein prior to the commencement of the flight(s).

   4.3 Single Entity, Mixed, or Pro Rate Charter

   Charterer shall cooperate and shall cause any travel agent involved in the charter to cooperate in the provision of information required by the Charter Regulations, including but not limited to the requirements for a Statement of Supporting Information pursuant to Section 212, Appendix B of the Charter Regulations.

5. **CHARGES**

   5.1 Fuel Charges

   The charter price for the Flight(s) contracted for herein, or any amendments thereto, reflect in part the projected average fuel consumption at a certain assumed price of fuel. The Charter price is subject to increase by a U.S. dollar amount equal to any additional sum that UFLY must pay for such fuel prices higher than assumed in accordance with Section 16 of this Agreement, as set forth.

   5.2 Special Services

   In the event UFLY assists Charterer in securing ground transportation, hotel reservations or other services, UFLY shall act only as Charterer's agent and Charterer shall bear the cost of such services and all risks of injury, damage or loss arising out of such services, and Charterer shall indemnify and hold UFLY harmless from any kind and all claims of loss asserted against, or incurred by, UFLY when acting in such capacity.

   5.3 Payment Conditions and Deposits.

   (i) In the event of a private charter, all payments made under this Agreement by the Charterer shall be by wire transfer to UFLY's account at WACHOVIA (account information specified in page 1) or by cashiers check made directly to UFLY. Payment in full for all flight segments identified in the Schedule shall be remitted 15 days prior to first flight departure. CHARTERER's obligation to pay for services shall not be subject to any offset, claims or disputes between the parties. Failure of CHARTERER shall constitute a material breach of this Agreement. UFLY shall be under no obligation to continue performance under this Agreement in the event of any non-payment by the CHARTERER, including but not limited to any deposits or pre-payments

UFLY: _____ DATE: 9/2/08   CHARTERER: _____ DATE: 8/29/08

3

**FALCON AIR EXPRESS DBA UFLY AIRWAYS**
FULL CHARTER CONTRACT
Contract 08-136

required by UFLY. The election of UFLY to continue performing although the CHARTERER has not made timely payments shall in no way be construed as a waiver of any rights to cease operations for CHARTERER's lack of performance.

(ii) Payments shall be made in United States currency, unless otherwise indicated in this Agreement. Payments shall be made in conformity with currency rules and regulations of all governments concerned and shall be accompanied by such authorization as is required to enable UFLY to convert such currencies into United States dollars and to transfer such funds to the United States. Any refunds due to the CHARTERER by UFLY shall be made in the currency and at the place where the CHARTERER originally made payment.

(iii) CHARTERER agrees to pay the charter price to UFLY or its authorized agent in full for each Flight as indicated in the Schedule of payments section of this Agreement.

(iv) Deposits: Simultaneously with execution of this Agreement and as a condition precedent to the effectiveness of this Agreement, in order to secure payment by CHARTERER of all obligations incurred pursuant to the terms hereof, CHARTERER shall pay to UFLY in immediately available funds an amount indicated as "deposit". CHARTERER agrees that in the event CHARTERER fails to make any timely payment required pursuant to the terms of this Agreement, including without limitation, any payment applicable to any cancellation charges, UFLY shall have the right thereafter without further notice, except as limited herein, to apply the deposit to any and all unpaid obligations of CHARTERER under this Agreement. Such failure to make any payments due under the terms of this Agreement, at UFLY's sole option, may result in cancellations of the Flight notwithstanding UFLY's application of the proceeds of the deposit to CHARTERER's unpaid obligations hereunder.

(v) In the event of a public charter, the escrow account at <u>Valley National Bank</u> secures advance CHARTERER payments received by UFLY on account of this Agreement. CHARTERER agrees to serve UFLY as soon as practicable after cancellation of a charter flight with any and all claims concerning such canceled charter Flight. In any event, the CHARTERER shall file any claim with UFLY or, if UFLY is not available, with the depository bank within sixty (60) days after the cancellation of a Flight, or that bank shall be released from all liability for that flight. Claims may be made only with respect to the non-performance of air transportation and shall apply only to advance payments that are unearned by UFLY or which UFLY is not entitled to retain under the terms and provisions of this Agreement.

(vi) UFLY shall advise CHARTERER as soon as practicable of any additional charges or taxes levied against UFLY which are the responsibility of the CHARTERER. Such taxes and charges shall be payable by CHARTERER within ten (10) days of receipt of such invoice.

(vii) No charter flight will commence until all required funds are deposited. This is in accordance with all Federal Regulations.

6. **CANCELLATIONS**

   6.1 Date of Cancellation
   The date of cancellation of a charter shall be the date on which UFLY receives written or telegraphic notification from the CHARTERER, or the date on which UFLY sends written or telegraphic notification to the CHARTERER that UFLY is canceling a charter.

   6.2 Cancellation Charges
   In the event that after this Agreement has been signed by the CHARTERER and UFLY: (i) The Agreement is voluntarily canceled at the request of the CHARTERER, (ii) the Agreement is canceled by UFLY because of the CHARTERER's ineligibility for charter transportation under the provisions of applicable Charter Regulations, (iii) the Agreement is canceled by UFLY because of the

UFLY: _____ DATE: 9/2/08    CHARTERER: _____ DATE: 8/29/08

4

**FALCON AIR EXPRESS DBA UFLY AIRWAYS**
FULL CHARTER CONTRACT
Contract 08-136

---

CHARTERER's failure to make payment by a due date in the payment schedule or (iv) UFLY cancels all future charter Flights under this Agreement or other contracts with the CHARTERER because of the CHARTERER's failure to pay all cancellation charges due within 14 days of the cancellation of another charter contract, or any portion thereof, the following charges will be assessed, as liquidated damages, when the cancellation occurs:

| | |
|---|---|
| More than one hundred eighty (180) days before charter is to commence from point of origin. | Ten (10%) percent of the total UFLY charges as specified in this Agreement, per canceled Flight. |
| At least sixty-one (61) days but not more than one hundred eighty (180) days before charter is to commence from point of origin. | Twenty (20%) percent of the total UFLY charges as specified in this Agreement, per canceled Flight. |
| At least thirty-one (31) days but not more than (60) days before charter is to commence from point of origin. | Twenty-five (35%) percent of the total UFLY charges as specified in this Agreement, per canceled Flight. |
| At least thirty (30) days, but not more than thirteen Days (13) | Fifty (50%) percent of the total UFLY charges as specified in this Agreement, per canceled Flight. |
| Twelve (12) days or less | 100% of the total UFLY charges as specified in this Agreement, per canceled Flight. |

6.3 In the event the cancellation of a charter flight under the section 6.2 line item (iii) above causes UFLY to ferry the aircraft in order to position the aircraft for its next flight, there shall be assessed, in addition the charge(s) specified in section 6.2 above, a charge equal to 95% of the charter price for such canceled flight divided by the statute miles such flight would have operated multiplied by the number of statute miles ferried, plus any applicable layover charges.

6.4 In the event that CHARTERER has not provided UFLY written notice of its intent to cancel this Agreement 72 hours, or any part thereof, prior to the first scheduled departure and CHARTERER has not remitted payment, CHARTERER shall become liable for a cancellation fee totaling 100% of each canceled Flight under this Agreement.

7. **OPERATIONS AND PERFORMANCE OF CHARTER FLIGHT**

   7.1 Operations
   Departure times shall be established by UFLY with previous approval of the CHARTERER and are subject to aircraft routing, gate space, weather conditions, third party performance of service agreements with UFLY and other operational factors. Each party shall use commercially reasonable efforts to cause on-time departures according to the schedule incorporated into Schedule "A". However, UFLY shall not be held liable for consequential or incidental damages in the event a flight fails to depart or arrive according to any schedule.

   7.2 Operating Rights
   This Agreement is conditioned on UFLY's timely receipt of any consents and/or approvals of United States or foreign governments and the timely grant of all landing rights and over flights authorizations required to operate the flights. UFLY will only operate to the destinations approved by the FAA and included in UFLY's approved Operations Manual.

UFLY: _____ DATE: 9/2/08    CHARTERER _____ DATE: 8/29/08

5

**FALCON AIR EXPRESS DBA UFLY AIRWAYS**
FULL CHARTER CONTRACT
Contract 08-136

7.3   Use of Space
In the event that any space available to the CHARTERER that will not be utilized by CHARTERER, CHARTERER consents to the use by UFLY of such space, without refund or reduction of the charter price, for the transport of UFLY personnel and property to the extent authorized by prevailing DOT regulations. The foregoing may also be subject to UFLY's company policy.

7.4   UFLY Rules
CHARTERER shall observe all operating rules and regulations of UFLY and comply with all reasonable instructions of UFLY employees and agents. It is understood that the aircraft and its crew will at all times be under the exclusive command and control of the pilot-in-command, whose orders will be strictly complied with by the CHARTERER and all passengers. Operational Control as defined in the FAR's shall remain solely with UFLY. Commercialization of the flights shall rest exclusively with the CHARTERER. UFLY may refuse to transport or may remove any passenger if such refusal or removal is reasonably necessary for the safety and comfort of the other passengers or if such passenger is creating a hazard to himself, to the flight, or to other persons or to property. In the event of such refusal or removal, UFLY shall not be required to refund any charges paid by CHARTERER.

7.5   Substitute and Sub-Service Aircraft
UFLY reserves the right to substitute similar aircraft as reasonably required for all flights. The foregoing shall be deemed to include UFLY's right to join together two or more groups. UFLY may, in its sole discretion, sub-contract the performance of its obligations under this Agreement in the event of a departure delay or failure of a Flight to depart due to mechanical, technical or operational events. However, UFLY shall be under no obligation to provide any such subcontract service in those circumstances.

7.6   Flight Delays
Each party shall use commercially reasonable efforts to cause on-time departures. UFLY shall have no responsibility for flight delays or cancellations due to weather, aircraft routing and vectoring, gate assignments, third parties lack of performance or other events outside the direct operational control of UFLY that cause a delay. UFLY shall use commercially reasonable efforts to transport the charter passengers and their baggage with reasonable dispatch, but will not be liable for failure of a Flight to depart or arrive according to any predetermined schedule or routing. UFLY shall be under no obligation to provide any passenger compensation of any form including but not limited to meal compensations, accommodations or passenger inconvenience compensation

7.7   Landing Facilities
If, for any reason, UFLY determines at its sole discretion at any time that the landing facilities at any point(s) on the itinerary of the charter are inadequate for safe operations or that landing is prohibited or restricted by law, UFLY may at its sole discretion substitute in place thereof the nearest point, which in UFLY's judgment is suitable, is available and a landing can be made. UFLY shall incur no liability for incidental or consequential damages or costs incurred as the result of UFLY's selection of an alternative landing point. UFLY shall not make such determinations on an arbitrary basis and shall attempt to seek CHARTERER's assistance in selecting an alternative landing point, but is under no obligation to select any other alternative landing point.

7.8   Boarding and Departure
The time of boarding and departure from the origin point and all intermediate points or a flight shall be determined by UFLY. In the event that operational constraints and/or airport restrictions prohibit a departure time prior to midnight on local date of operation, UFLY will affect a departure at the closest possible time thereafter. In the event that the CHARTERER does not have the passengers ready for boarding at the time specified, the Flight may proceed without the full load. In the event that individual passenger(s) fail to present themselves for boarding at the time specified by UFLY, the

UFLY: _____ DATE: 9/2/08   CHARTERER: _____ DATE: 8/29/08

6

**FALCON AIR EXPRESS DBA UFLY AIRWAYS**
FULL CHARTER CONTRACT
Contract 08-136

---

Flight may proceed without said passenger(s) and UFLY shall not be liable to the CHARTERER nor to the Passengers for their transportation or expenses, nor shall UFLY refund any portion of the charter price to the CHARTERER under such circumstances.

7.9   UFLY reserves the right to reject operations into any airport and/or country which UFLY in it's sole judgment deems to be unsafe for the intended operations or which is otherwise not in the best interests of UFLY, its agents, employees, owners and subsidiaries or into which UFLY does not have governmental authority to service. UFLY shall not be held liable for any damages, whether they be in contract or tort, including consequential or incidental damages resulting from UFLY election to reject operations into such airports or countries as described above. However, UFLY shall in no way exercise this right to reject in an unreasonable manner.

7.10   UFLY, at is sole discretion, may deem necessary to have an in-flight mechanic onboard any Flight. In such event, the in-flight mechanic shall be considered a crew member for purposes of this Agreement.

7.11   Contact Person
Parties agree to cooperate with each other for the successful completion of the flights identified in the Schedule. CHARTERER shall appoint a person (the "Contact Person") who shall be available to UFLY on a 24 hour basis at the telephone numbers indicated for the purpose of coordinating CHARTERER's decisions regarding to the Flights. The "Contact Person" shall be an attorney-in-fact and shall authorize all instructions that the CHARTERER shall give to UFLY under the terms of this Agreement. If within the 48 hours prior to the scheduled departure of any Flight, the Contact Person fails to respond to a call, email or fax sent by UFLY within 30 minutes (or shorter should circumstances require) UFLY shall make any and all decisions on behalf of the CHARTERER as are necessary for the safe and successful operation of the Flights. CHARTERER hereby expressly ratifies all decisions and agrees to hold UFLY harmless from and against any loss, cost or expense paid or incurred by CHARTERER as a result of any such decisions made by UFLY. CHARTERER shall provide to UFLY the Contact Person's name, telephone numbers, fax numbers, and email.

7.12   Icing/Deicing
There may be times when deicing will be necessary due to weather/climate conditions. UFLY, at its sole discretion, shall assess the weather/climate conditions and determine if deicing is anticipated during the operation identified in Schedule "A". Upon UFLY's determination of any possible deicing, UFLY shall advise CHARTERER of same and request a deposit from CHARTERER to cover any deicing expenses. Said deposit shall be paid by CHARTERER to UFLY one (1) day prior to flight departure. CHARTERER will be solely responsible for the expenses incurred for deicing during the operation under Schedule "A". If deposit is paid and deicing is not performed, said deposit will be applied to any outstanding balance due at flight reconciliation.

8.   **OPERATING AUTHORITY**

8.1   UFLY shall, with regard to International destinations, require written notice no less than (10) days advance notice to operate the Aircraft outside the continental United States. UFLY's performance of each flight provided for herein shall be subject to the timely issuance of such approvals, clearances, permits and operating authorities as may be required by any government, governmental agency or airport authority for the operation of such flight, including without limitation such landing, transit, over flight and uplift rights as may be necessary. UFLY will use its best efforts to obtain all necessary approvals, clearances, permits and consents necessary to operate the flights covered by this Agreement. CHARTERER shall use its best efforts to assist UFLY in the securing of such approvals or permits. The securing of such rights shall be for the account of the CHARTERER.

8.2   In the event that any government or governmental agency or airport authority shall fail or refuse to issue or grant the approvals, clearances, permits or operating authority referred to herein sufficiently in advance of scheduled departure to reasonably allow UFLY to make required flight arrangements or

UFLY: _(signature)_ DATE: _9/2/08_   CHARTERER _(signature)_ DATE: _8/29/08_

7

**FALCON AIR EXPRESS DBA UFLY AIRWAYS**
FULL CHARTER CONTRACT
Contract 08-136

---

shall, after issuance, revoke or rescind the same, UFLY may elect to terminate this Agreement as to the affected flight(s) without liability for penalties or damages.

8.3 Upon such termination and unless the failure to obtain or maintain required governmental approvals was attributable to an act or omission of CHARTERER, UFLY shall refund all sums received by it on account of the charter price, excepting:

1) Nonrefundable government fees, and

2) That portion of the Charter price attributable to transportation already performed by UFLY and such remaining transportation as will be performed by UFLY or by another carrier at UFLY's direction.

8.4 CHARTERER hereby acknowledges that it has not relied on any representation that the approvals, clearances, permits or operating authorities referred to herein have or will be obtained. Any such representation is hereby disavowed by UFLY.

9. **CHARTER PROSPECTUS AND ELIGIBILITY REQUIREMENTS**

9.1 CHARTERER hereby agrees that upon execution of this Agreement, if this contract is for a Public Charter, will file a public charter prospectus with DOT to the extent necessary to secure approval of the program contemplated by this Agreement and provide UFLY with copies of all filings upon approval by DOT, and that enforceability of this Agreement by CHARTERER shall be contingent upon the acceptance and approval of such prospectus by the DOT.

9.2 CHARTERER shall bear the expenses of such DOT filing.

9.3 Except as otherwise provided herein, each party is responsible for its own compliance with all applicable laws and governmental rules and regulations, including but not limited to the obligation to establish and maintain its own public charter bonding and escrow bank accounts.

9.4 CHARTERER represents that it is authorized under applicable laws and regulations to enter into this Agreement and to act as CHARTERER of the aircraft, and such laws and regulations as well as the term and conditions of this Agreement.

9.5 Each flight participant shall be responsible for obtaining all necessary travel documents (passport, visa, tourist card, immunization certificate and any other documents as required) and for complying with the laws of each country from, through or to which he/she receives transportation.

9.6 CHARTERER shall indemnify UFLY for any loss, damage or expense suffered or incurred by reason of any flight participant's failure to comply with this Section, unless caused by the negligence or willful misconduct of UFLY or of the passenger.

9.7 UFLY shall have the right, without penalty, without return of deposits, and without payments of damages, to cancel a flight or refuse to board any passengers should UFLY reasonably determine that CHARTERER, its agents or passengers have failed to comply with any applicable regulations and/or laws.

10. **IMMIGRATION AND CUSTOMS**

10.1 UFLY assumes no responsibility for compliance by Flight passengers with immigration and customs laws of each country from, through, or to which a Flight is operated pursuant to this Agreement. CHARTERER shall indemnify and hold UFLY, its directors, officers, shareholders, employees and agents (collectively, the "Indemnitee") harmless from and against any and all fees, fines, penalties,

UFLY: _____ DATE: 9/2/08   CHARTERER: _____ DATE: 8/29/08

8

**FALCON AIR EXPRESS DBA UFLY AIRWAYS**
FULL CHARTER CONTRACT
Contract 08-136

---

attorneys fees, liens, claims, losses, liabilities, suits, judgments, expenses (regardless of when the same shall be made or incurred, whether during or after the Termination of this Agreement) for or on account of or arising from or in any way connected with fines or penalties levied against UFLY for violations of APIS filings, Customs and Border Patrol, Drug Enforcement Agency, Department of Agriculture, Department of Homeland Security or any other Governmental penalties associated solely with the performance of this Agreement. In the event, UFLY receives a violation notice the Parties shall cooperate in reducing or eliminating any penalties or fines associated with such notice. In the event that a penalty or fine is levied upon UFLY, CHARTERER shall immediately remit to UFLY the amount necessary to cure such penalty or fine. Failure to do so shall constitute a material breach of this Agreement and UFLY shall be under no obligation to continue its performance of this Agreement. CHARTERER will use its best efforts to obtain any documentation, evidentiary materials or witnesses that may aid UFLY in the defense of all fines or penalties imposed

11. **LIABILITY**

   11.1   Force Majeure
   If UFLY or the CHARTERER is rendered unable, wholly or in part, by Force Majeure to carry out its obligations under this Agreement, other than the obligations to make money payments, such party as is prevented from performing shall be entitled to cancel, with such notice to the other party as is reasonable under the circumstances, any and all flights affected by such Force Majeure without being subject to or responsible for any penalties or damages for such cancellation (the "Canceling Party"). Furthermore, the obligations of Canceling Party, so far as they are affected by the Force Majeure, shall be suspended during the continuance of the Force Majeure. The Canceling Party shall use commercially reasonable efforts to remove the Force Majeure with all reasonable dispatch but shall not be required to settle strikes, lockout, or other labor difficulty contrary to its wishes and in its sole discretion. The term "Force Majeure" as hereby employed shall mean any event which is not reasonable within the control of the parties hereto which would prevent such party from fulfilling its obligation under this Agreement, including but not limited to acts of God, strike, lockout, or other industrial disturbance, act of the public enemy, war, blockade, public riot, lightning, fire, storm, flood, explosion, governmental restraint, and any otherwise occurrence beyond UFLY control that might place in danger the safety of the operation.

   UFLY shall not be liable for loss, injury, damage or delay to or suffered by the CHARTERER or any passengers from landing at an airport at a destination other than contracted, failure to stop at any contracted intermediate airport, any Flight interruption, delay or cancellation caused by mechanical difficulties, riots, wars, civil commotions, strikes, labor disputes, weather conditions, acts of God, public enemies, quarantine, the absences of any necessary government approvals, or any other cause (whether of the same or different nature) beyond UFLY control. In the event any of the foregoing shall occur, UFLY shall have the right to cancel all or parts of this contract and shall give notice of such occurrence of the event and the cancellation to the CHARTERER and the rates and charges stated herein shall apply only to services actually performed prior to cancellation by UFLY.

   11.2   Limitation of Liability for Personal Injury or Death on International Flights.
   UFLY (or the "Carrier") shall avail itself of the limitation of liability provided in the Convention for the Unification of Certain Rules Relating to International Carriage by Air signed at Warsaw October 12, 1929, or provided by the said Convention as amended by the Protocol signed at the Hague September 28, 1955, Convention signed at Guadalajara 18th September 1961, Protocol to Amend the Convention signed at Guatemala City 8th March 1961, Protocol to Amend the Convention signed at Montreal 25th September 1975 or the "Montreal Convention" for the Unification of Certain Rules for the International Carriage by Air done at Montreal on May 28, 1999. Where the "Montreal Convention" is applicable, it governs and may limit the liability of carriers in respect of death or injury and for destruction or loss of, or damage to, baggage, and for delay.

UFLY: _（P）_ DATE: _9/2/08_  CHARTERER _[signature]_ DATE: _8/29/08_

9

**FALCON AIR EXPRESS DBA UFLY AIRWAYS**
FULL CHARTER CONTRACT
Contract 08-136

---

a) Furthermore, UFLY shall not invoke the limitation in Article 22 (1) of the Convention as to any claim for recoverable compensatory damages arising under Article 17 of the Convention.

b) UFLY shall not avail itself of any defense under Article 20 (1) of the Convention with respect to that portion of such claim which does not exceed 100,000 SDRs (Special Drawing Rights)

c) Except as otherwise provided in Paragraphs "a" and "b", UFLY reserves all defenses available under the Convention to such claims. With respect to third parties, UFLY reserves all rights of recourse against any other persons, including without limitation, rights of contribution and indemnity.

d) UFLY agrees that subject to applicable law for recoverable compensatory damages for such claims may be determined by reference to the law of the domicile or permanent residence of the passenger.

e) Nothing herein shall be deemed to affect the rights and liabilities of the Carrier with regard to any claim brought by, on behalf of, or in respect of any person who has willfully caused damage resulting in death, wounding, or other bodily injury of a passenger. CHARTERER shall cooperate with the Carrier to assure that, at the time the passenger is given his ticket or other documentary equivalent thereto, there shall be furnished to each passenger whose transportation is governed by the foregoing, the following notice in or on the ticket envelope.

**"ADVICE TO INTERNATIONAL PASSENGER ON LIMITATION OF LIABILITY"**
"Passengers on a journey involving an ultimate destination or stop in a country other than the country of origin are advised that the provisions of the treaties known as the "Warsaw Convention" and the "Montreal Convention" may be applicable to the entire journey, including any portion entirely within the country of origin or destination. For such passengers on a journey to, from or with an agreed stopping place in the United States of America, the Convention and special contracts of carriage embodied in the applicable tariff provide that the liability of UFLY and certain other carrier parties to such special contracts, for death or personal injury to passengers is limited to proven damages not to exceed the amounts stipulated and specified in the rules and regulations of the special contracts of carriage embodied in the applicable tariffs of the Conventions". For such passengers traveling by a carrier not a party to such special contracts or on a journey not to, from, or having an agreed stopping place in the United States of America, liability of the carrier for death or personal injury to passengers are limited in most cases. The names of carrier parties to such special contracts are available at all ticket offices of such carriers and may be examined on request. Additional protection can usually be obtained by purchasing insurance from a private company. Such insurance is not affected by any limitation of the Carrier's liability under the Warsaw Convention or such special contract of carriage".

12. **BAGGAGE**

  12.1 Baggage Checks
  UFLY shall issue and deliver to each passenger its standard applicable form of baggage check for use and placement on each item of baggage to be accepted by UFLY from such participant at check-in for transportation on the Flight.

  12.2 Baggage Transportation Liability
  UFLY shall use its best efforts to transport each passenger with his/her checked baggage. However, UFLY shall transport the maximum baggage allowed restricted by the maximum carrying capacity of the aircraft provided. UFLY shall have no liability for baggage that fails to be

UFLY: _____ DATE: 9/2/08    CHARTERER: _____ DATE: 8/29/08

10

**FALCON AIR EXPRESS DBA UFLY AIRWAYS**
FULL CHARTER CONTRACT
Contract 08-136

---

transported with the passenger due to such operational constraints to be determined solely by UFLY and in accordance the maximum payload available for each flight segment.

12.3   Acceptable Baggage
UFLY will accept for transportation as baggage such personal property as is necessary or appropriate for the wear, use, or convenience of the passenger for the purpose of the trip, subject to the following conditions: (i) UFLY may refuse to transport or may remove at any point any baggage which the passenger refuses to allow UFLY upon request to examine. (ii) <u>Checked baggage is limited to 1 suitcase not to exceed 60" and (iii) an additional bag 55"</u> in overall length, width and height per two participants. All payload (passengers and baggage) will be subject to structural and performance limits of the aircraft. CHARTERER will be advised when baggage restrictions may be varied in order to provide non-stop service. (iv) Acceptability of carry-on luggage for storage in the bin is dependent on the weight and size of the item in the sole discretion of UFLY. Carry-on property that cannot be stored under the seat (8" x 13" x 22") will be taken and stored at the passenger's risk.

12.4   Unacceptable Baggage
UFLY may refuse to accept the following articles for transportation unless advance written arrangements have been made: (i) Assembled firearms or ammunition could be acceptable only by previous arrangements and authorizations. (ii) Any other articles which cause annoyance to passengers or which cannot be carried in the baggage or cargo compartments of the aircraft are generally not acceptable. (iii) Any liquids, as baggage or otherwise or any other articles not suitably packed for transportation in the aircraft are generally not acceptable. (iv) Any article listed in the Official Air Transport Restricted Articles Tariff and revisions thereto or reissues thereof issued by Airline Tariff & Publishing Company, Agent, and such article will be accepted on conformity with the above named tariff. (v) PERISHABLE OR FRAGILE ITEMS (including electronic, musical, ornamental, artistic, photographic, recreational, sporting and mechanical items, items made of or bottled in glass, items made of paper and liquids) will be accepted if they are appropriately packaged in an original factory sealed carton, cardboard mailing tube or container or case designed for shipping such items or packed with protective internal material. However, fragile items may be accepted without the appropriate packaging upon the execution of a release. (UFLY will supply a release which relieves UFLY of liability for damage or destruction of checked baggage of the type identified above, which results solely from the unsuitability of such items as checked baggage and/or inadequacy of their packaging and not from UFLY's failure to exercise the ordinary standard of care.) (vi) UFLY shall be held harmless from any liability for loss, damage, or delay of baggage or its contents except that stated expressly hereinabove. UFLY will not be responsible for baggage I interlined by another carrier. UFLY's authority to reject any baggage that does not meet UFLY's safety standards shall be absolute and shall not incur any liability or damages for incidental or consequential damages either in contract or tort.

13.   **INTEGRATION**

13.1   This Agreement is the sole and final agreement between UFLY and the CHARTERER with respect to the Flights to which the Agreement pertains. The terms of the agreement may only be varied in writing by a document signed on behalf of both UFLY and the CHARTERER. No oral agreement by or on behalf of UFLY or the CHARTERER shall be effective in contradiction to the terms of this Agreement.

14.   **MANIFESTS AND EMERGENCY DATA**

14.1   For all flight segments the CHARTERER is responsible to obtain and deliver to UFLY a complete passenger list with each passenger full First Name, Middle Initial, and Last Name, before the Flight departs. For flight segments departing, or arriving in the United States, the CHARTERER is responsible for soliciting emergency contact data information from United States citizens. These emergency contact data cards are to be maintained by the CHARTERER until the flight is completed.

UFLY: _____ DATE: 9/2/08    CHARTERER: _____ DATE: 8/29/08

11

**FALCON AIR EXPRESS DBA UFLY AIRWAYS**
FULL CHARTER CONTRACT
Contract 08-136

---

They then are to be destroyed. The CHARTERER will hold UFLY harmless for any fines or penalties imposed by the Department of Transportation for violations of 14 CFR 243. CHARTERER will hold all liability with regards to the imposition of fines as well as the attorney's fees and costs of defending the same before the courts or governmental body with jurisdiction to adjudicate the violations. CHARTERER will use its best efforts to obtain any documentation, evidentiary materials or witnesses that may aid UFLY in the defense of all fines or penalties imposed.

15. **SECURITY**

   15.1   Due to the security requirements dictated by the U.S Department of Homeland Security, Transportation Security Administration, for all international transportation to and/or from the U.S. certain data and information from each and every passenger must be provided by CHARTERER. CHARTEREER must comply with specific instructions for entering and completing an e-APIS online simultaneously with passenger check-in at time of departure. No later than one (1) week prior to flight departure a UFLY authorized representative will be required to give training to an authorized representative of the CHARTERER for the specific requirements to be followed for an e-APIS. The authorized person designated by the CHARTERER for the training shall be the same person that must be responsible for entering and completing the e-APIS. The CHARTERER is solely liable for the compliance with the instructions given during the training by UFLY. In case of non-compliance by the CHARTERER of such instructions and/or process, the CHARTERER will be solely responsible for the payments of any fine or fines imposed to UFLY due to the failure of compliance.

   15.2   CHARTERER agrees to cooperate with UFLY in fulfilling any requirements pertaining to security of the aircraft. Passengers are subject to search of their person and search or inspection of their property, including checked baggage, in accordance with security screening procedures, which can include an electronic detector with or without the passenger's consent or knowledge.

   15.3   Any passenger who does not consent to a search of his person or property will be refused transportation by UFLY, and UFLY will have no liability for an inconvenience, delay, loss, damage injury or refund to all passenger.

16. **BASE FUEL PRICE**.

   16.1   CHARTERER agrees and acknowledges that the Charter price(s) is directly related to the "Base Fuel Price per Gallon" specified in Page #1 to this Agreement. A surcharge of the increase in cost of fuel in addition to the charter price(s) will be assessed to the CHARTERER in the event the base fuel price of UFLY's fuel is increased. Documentation of such increase will be furnished to the CHARTERER. Such surcharge shall be the actual cost to CHARTERER as a result of the increase in fuel price. *CHARTERER has the right to request from UFLY a copy of the original invoices from fuel provider. UFLY will use its best efforts to fuel from the most economic source reasonably available.*

      16.1.1   Fuel prices change on Tuesdays. UFLY will obtain actual fuel prices on the Tuesday prior to flight departure and subsequently advise CHARTERER by Wednesday of actual prices. UFLY will send CHARTERER an invoice for the fuel surcharge and said invoice must be paid to UFLY by CHARTERER no later than the end of business on the day prior to flight departure for each flight departure identified in Schedule "A". Payments to be made into the non-Escrow account specified on page 1.

   16.2   UFLY agrees and acknowledges that in the event the actual fuel average is lower than that of UFLY's base fuel price, UFLY shall give CHARTERER a credit for the difference in average fuel price. Said credit shall be included in the flight reconciliation after flight completion and paid to CHARTERER within 5 business days after flight reconciliation is issued.

UFLY: _____ DATE: 9/2/08     CHARTERER: _____ DATE: 8/29/08

12

**FALCON AIR EXPRESS DBA UFLY AIRWAYS**
FULL CHARTER CONTRACT
Contract 08-136

17. **SINGLE PLANE SERVICE**

    17.1 UFLY does not guarantee nonstop or single-plane service.

18. **COMPLIANCE FAILURE**

    18.1 Failure of CHARTERER or any flight participant to comply with applicable laws or regulations is a material breach of this Agreement. In such event, and without limitation of other rights or remedies available to UFLY, UFLY shall have the right, at its election, to cancel any or all of the remaining flight(s).

19. **AMENDMENT AND WAIVER**

    This Agreement may be amended or modified at any time and in all respects by an instrument in writing executed by UFLY and the CHARTERER.

20. **CHOICE OF LAW**

    This Agreement shall be governed by and construed and interpreted in accordance with the laws of the State of Florida, without reference to its conflict of law rules. The parties consent and agree to submit to the exclusive jurisdiction of the Circuit Court of the Eleventh Judicial District in and for Miami-Dade County, Florida and the US District Court, Southern District of Florida, and further agree that venue in Miami-Dade County, Florida shall be proper and convenient.

21. **ATTORNEYS FEES**

    If any action is brought at law, in equity or arbitration, including an action for declaratory or injunctive relief, is brought to enforce or interpret the provisions of this Agreement, the prevailing Party shall be entitled to reasonable attorneys' fees actually incurred, whether in arbitration, pretrial, trail or appellate levels, set by the Court or the arbitrator in the same action or in a separate action brought for that purpose, including costs and fees for investigation and collection of any amount awarded in such action, in addition to any other relief to which the party may be entitled.

SIGNATURE PAGE TO FOLLOW

UFLY: _(signed)_ DATE: 9/2/08     CHARTERER _(signed)_ DATE: 8/29/08

13

## FALCON AIR EXPRESS DBA UFLY AIRWAYS
### FULL CHARTER CONTRACT
### Contract 08-136

---

By signing below both parties agree to the terms and conditions as set forth in this Agreement.

ACCEPTED BY **UFLY AIRWAYS**

BY: __Jason Clough__
  PRINTED NAME
SIGNATURE: __Jason P. Clough__
TITLE: __Sales / Marketing__
DATE SIGNED: __9/2/08__

ACCEPTED BY **PRIVATE JET SERVICES GROUP**

BY: __Nancy J. King__
  PRINTED NAME
SIGNATURE: __Nancy J. King__
TITLE: __Managing Director of Operations__
DATE SIGNED: __8/29/08__

**THIS AGREEMENT IS NOT BINDING ON UFLY UNTIL SIGNED BY ONE OF ITS AUTHORIZED PERSONNEL AND THE REQUIRED DEPOSIT RECEIVED.** Prior to that time, this agreement is subject to crew and equipment availability. This offer of transportation must be completed and signed with required deposit within five (5) calendar days from date issued.

UFLY: __JR__  DATE: __9/2/08__  CHARTERER: __(initials)__  DATE: __8/29/08__

14

# FALCON AIR EXPRESS DBA UFLY AIRWAYS
## FULL CHARTER CONTRACT
### Contract 08-136

## SCHEDULE "A"
### Proposed Charter Itinerary and Pricing

| DATE | FROM-TO | F/L | DEPARTURE (local) | CONTRACT PRICE |
|---|---|---|---|---|
| 1-12-09 | MIA – YYZ | F | | |
| 1-12-09 | YYZ – SAT | L | 1000 | $60,965.80 |
| 1-14-09 | SAT – YYZ | L | 1700 | |
| 1-14-09 | YYZ – MIA | F | | $60,965.80 |

UFLY: _(Y)_ DATE: _9/2/08_   CHARTERER: _____ DATE: _8/29/08_

15

%JS 44 (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

### I. (a) PLAINTIFFS
PRIVATE JET SERVICES GROUP, INC.

(b) County of Residence of First Listed Plaintiff   Rockingham County, NH
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
Kenneth W. Waterway, Esq.
Sedgwick, Detert, Moran & Arnold LLP
2400 East Commercial Blvd., Ste. 1100
Fort Lauderdale, FL 33308

### DEFENDANTS
FALCON AIR EXPRESS, INC. d/b/a UFLY AIRWAYS

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

Attorneys (If Known)
1:09CV20125 Lenard-Garber

(d) Check County Where Action Arose: ✓ MIAMI-DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
✓ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ✓ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ✓ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | LABOR | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | IMMIGRATION | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |

### V. ORIGIN (Place an "X" in One Box Only)
✓ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. RELATED/RE-FILED CASE(S).
(See instructions second page):
a) Re-filed Case ☐ YES ✓ NO   b) Related Cases ☐ YES ✓ NO
JUDGE _____   DOCKET NUMBER _____

### VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):
28 USC Section 1332

LENGTH OF TRIAL via  3-5  days estimated (for both sides to try entire case)

### VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 75,000.00+
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ✓ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE
SIGNATURE OF ATTORNEY OF RECORD
DATE January 15, 2009

FOR OFFICE USE ONLY
AMOUNT _____ RECEIPT # 545216 IFP